IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

VERTINA MUWONGE

        Plaintiff,

v.                                                       Civil Action No. 3:13-cv-00438-JAG

DEPARTMENT OF JUVENILE JUSTICE, *et. al.*,

        Defendants.

## CORRECTED MEMORANDUM OPINION

This matter comes before the Court on the defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1] (Dk. No. 13.) The plaintiff, Vertina Muwonge, a former employee of the Virginia Department of Juvenile Justice ("DJJ"), claims that the defendants violated both federal and state law in firing her.

Each of Muwonge's claims fail for the following reasons. Her Title VII claim fails to adequately allege that a desire to retaliate against her was the but-for cause of her termination. Her due process[2] claim fails because she has not sued a "person" within the meaning of 42 U.S.C. § 1983 and because she received procedural protection that satisfied constitutional

---

[1] The defendants also move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Because the complaint fails to state a valid legal claim, the Court need not address its sufficiency under Rule 12(b)(1).

[2] Muwonge claims that the defendants violated her rights under 42 U.S.C. § 1983. Section 1983 is merely a procedural vehicle to assert violations of Federal law; it does not create any substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 601, 99 S.Ct. 1905 (1979).

minimums.   Turning to her state law theories, Muwonge's wrongful termination claim is precluded by her unappealed decision in the state grievance process.   Her conspiracy claim fails because employment interests fall outside of the scope of Virginia's conspiracy statute and because the intra-corporate conspiracy doctrine bars the claim.   Finally, her workers' compensation claim fails because she has not adequately alleged causation under the statute. Accordingly, the Court GRANTS the defendants' Motion to Dismiss and DISMISSES Muwonge's suit with prejudice.

## I. Statement of Facts[3]

Muwonge worked as a Juvenile Corrections Officer at the DJJ's Bon Air Facility, where her responsibilities included guarding juvenile offenders, implementing treatment programs, and conducting inspections and searches.   In April 2011, Muwonge's supervisor, defendant Kenneth Washington, moved Muwonge to the "A-Break Days" shift.   (Dk. No. 1, ex. 2 at 6.)   Muwonge complained about this transfer to Washington's supervisor, Fred Lucas, then-Acting Superintendent of the Bon Air Facility.   Washington apparently grew angry that Muwonge "went over his head," and vowed to put an end to her complaint.   (Dk. No. 4 at ¶¶ 3, 6.)   Washington and other supervisors then mistreated Muwonge, leading her to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 14, 2012.   The EEOC investigated her complaint and concluded on March 29, 2012, that she had not established a violation of Title VII.

---

[3] In considering a motion under Rule 12(b)(6), the Court views the facts alleged in the complaint in the light most favorable to Muwonge. *See De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir.1991).

In September 2012, the events leading to Muwonge's firing occurred. Her problems began when she had an altercation with a juvenile offender under her supervision. Muwonge verbally taunted the young woman to the point where the juvenile hit Muwonge in the face. One of the defendants, DJJ Officer Chakela Clayton, observed the confrontation and assisted in restraining the juvenile. This incident prompted an investigation by the DJJ, which concluded that Muwonge's conduct "constituted verbal and mental abuse" and was "unbecoming of a corrections employee." (Dk. No. 10, ex. 1 at 5.) The DJJ confronted Muwonge with her behavior, but she did not offer a good explanation. The DJJ then issued Muwonge disciplinary notices, placed her on a ten-day suspension, and fired her on December 17, 2012. Before her dismissal, Muwonge filed a grievance with the state Department of Employment Dispute Resolution, requesting an "administrative due process hearing." (Dk. No. 10, ex. 1 at 1.) The agency upheld Muwonge's termination. She then appealed this decision to the Department of Human Resources Management ("DHRM"), which further affirmed her termination. Following the DHRM decision, Muwonge filed suit in this Court.

## II. Discussion

Before turning to each specific claim, the Court will address claim preclusion, a defense raised as to all of Muwonge's claims. The defendants argue that the decision rendered in Muwonge's grievance hearing precludes her from raising the claims in this suit. Claim preclusion is a rule of law that keeps a litigant from raising the same issue in successive proceedings; in other words, litigants only get one bite at the apple. Under claim preclusion, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808 (2001)

(internal quotation marks omitted).[4] Subject to certain exceptions discussed below, a plaintiff must "raise all possible theories of recovery and . . . demand all desired remedies in one proceeding at peril of losing all not raised in it." *Dionne v. Mayor and City Council of Balt.*, 40 F.3d 677, 683 (4th Cir. 1994).

### A. Title VII Claim

### 1. Claim Preclusion

State administrative decisions for which a plaintiff has not sought state-court review do not have preclusive effect on Title VII claims. *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 796, 106 S.Ct. 3220 (1986) (stating that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims"). Because Muwonge did not appeal the conclusions of her administrative hearing to a Virginia court, the hearing officer's decision in favor of the DJJ does not bar Muwonge's Title VII retaliation claim against Washington.

### 2. Sufficiency

Title VII prohibits an employer from retaliating against an employee for opposing unlawful discrimination or participating in Title VII processes. 42 U.S.C. § 2000e-3(a). To show unlawful retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action at the hands of the defendant; and (3) the defendant took the adverse action because of the protected activity. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001). In order to satisfy the causation element, a plaintiff must show that the defendant's "desire to retaliate was the but-for cause" and not merely a "motivating factor" of the adverse action. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133

---

[4] The related doctrine of issue preclusion bars successive litigation of issues of fact or law previously raised.

S.Ct. 2517, 2528, 2534 (2013). In other words, a plaintiff's claim must allege facts sufficient to create a "reasonable inference" that a connection exists between the two events. *Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 543 (4th Cir. 2003).

Muwonge alleges no facts showing that her EEOC claim led to her firing. Unfortunately for her, Muwonge's own allegations refute any reasonable inference of retaliation. Rather, her termination stemmed from a serious incident between Muwonge and a juvenile detainee under her supervision. Muwonge admitted taunting the detainee to the point where the juvenile punched Muwonge in the face. (Dk. No. 20, ex. 1 at 3, 5.) The hearing officer rightly described this conduct as "very serious" and noted that it would "obviously constitute a Group III offense," a level which may result in termination. (Dk. No. 20, ex. 1 at 7, 9.) Simply put, Muwonge's complaint shows that her misconduct, not any desire to retaliate, led to her firing. For this reason, the Court DISMISSES Muwonge's Title VII claim.

### B. Due Process Claim

#### 1. Claim Preclusion

For claims raised under 42 U.S.C. § 1983, federal common law forbids the application of claim preclusion to the decisions of unreviewed state administrative proceedings. *Dionne v. Mayor and City Council of Balt.*, 40 F.3d 677, 685 (4th Cir. 1994). The doctrine of claim preclusion, therefore, does not cause her claim to fail.

#### 2. "Person" Status under § 1983

Section 1983 provides a remedy for the deprivation of a constitutional right by a "person" acting under the color of state law. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 60, 109 S.Ct. 2304 (1989). A state does not qualify as a "person," and cannot be sued under § 1983. *Id.* at 71. This immunity extends to "governmental entities that are considered 'arms of the state'

5

for Eleventh Amendment purposes." *Id.* at 70. State agencies qualify as arms of the state, shielding them from liability under § 1983. *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995). Suits against individual state officers in their official capacities also function as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991). These cases establish that suits against the state, its agencies, or state employees in their official capacity do not qualify as suits against a "person," and cannot be brought under § 1983.

Muwonge's suit names the DJJ, Washington, and Clayton as defendants. The DJJ is an agency of the Commonwealth, and consequently an arm of the state. *See* Va. Code Ann. § 66-1 ("There is hereby created within the executive branch, responsible to the Governor, a Department of Juvenile Justice."); *see also Meredith-Clinevell v. Dep't of Juvenile Justice ex rel. Virginia*, 344 F.Supp.2d 951, 954 (W.D. Va. 2004) (finding that the DJJ is entitled to immunity under the Eleventh Amendment). As a state agency, the DJJ does not qualify as a "person" under § 1983. Clayton and Washington similarly do not qualify as "persons" under § 1983 because Muwonge sues them in their official capacities. A suit against a defendant in his official capacity is the same as a suit against the agency for whom he works. *Hafer*, 502 U.S. at 25. Because none of the defendants named in Muwonge's due process claim are "persons" under the statute, her § 1983 claim must fail.

### 3. Sufficiency

Even if Muwonge had sued a valid "person," however, her due process claim would still fail because she received adequate process in conjunction with her termination.

### a. Pretermination Procedures

Before a public employer can fire a tenured employee, due process requires that the employer provide the employee with "oral or written notice of the charges against him, an

6

explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487 (1985). Such pre-termination hearings do not require elaborate procedures, *Garraghty v. Jordan*, 830 F.2d 1295, 1300, 1302 (4th Cir. 1987), and primarily ensure that the employer does not act too hastily, because "a pre-termination hearing may be the only meaningful opportunity to invoke the discretion of the decision maker." *Crocker v. Fluvanna Cty. Bd. of Welfare*, 859 F.2d 14, 17 (4th Cir. 1988) (citing *Loudermill*, 470 U.S. at 542-43). Requiring only minimal process in a pre-termination hearing prevents courts from "intrud[ing] to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546.

When determining the sufficiency of a *Loudermill* hearing, courts survey the "entire panoply of predeprivation and postdeprivation process provided by the state" to the plaintiff. *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990) (citing *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975 (1990)); *See Crocker*, 859 F.2d at 17 ("[W]e consider *Loudermill's* premise that the decision in that case rested in part on the provisions in state law for a full post-termination hearing"); *Garraghty v. Commonwealth of Va. Dep't of Corr.*, 52 F.3d 1274, 1283 (4th Cir. 1995) (quoting *Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir. 1987) ("[I]n the event of minimal pre-termination safeguards, the substantial private interest one has in not being deprived of his livelihood requires a full hearing after termination.")). The Fourth Circuit has upheld similarly brief hearings against due process claims where the employee had access to a full post-termination proceeding. *Garraghty*, 52 F.3d at 1283 (citing *Holland v. Rimmer*, 25 F.3d 1251, 1258 (4th Cir. 1994); *Linton v. Frederick Cty. Bd. of Cty. Comm'rs*, 964 F.2d 1436, 1441 (4th Cir. 1992); *McLelland v. Massinga*, 786 F.2d 1205, 1213 (4th Cir. 1986)).

7

Here, after Muwonge's altercation with a juvenile detainee, the DJJ notified her that it would investigate her behavior.  After completing the investigation, three senior staff members met with Muwonge, where they provided her a written notice containing the investigative findings and  the recommendation to terminate her employment.  After giving her this notice, Washington specifically asked Muwonge whether she "had anything to say" in response to the findings.  (Dk. No. 4 at ¶ 30.)  Although Muwonge's pre-termination hearing occurred without much advance warning, she had access to, and took full advantage of, the extensive grievance procedures provided by Virginia law.  This satisfies *Loudermill's* pretermination requirement of to notice and a hearing. For these reasons the Court DISMISSES her pretermination due process claim.

### b. Post Termination Proceedings

Muwonge had—and took—an adequate opportunity to contest her firing under the Virginia grievance procedure.  She could raise her issues with management orally and in writing.  Va. Code Ann. § 2.2-3003(B), (C).  She had a hearing before an impartial fact-finder.  § 2.2-3005. She had a right to appeal to the state DHRM, and, if dissatisfied, a right to appeal to Virginia's courts.  § 2.2-3006(A), (B). These procedures more than satisfy the requirements of due process.  *See Rogers v. Norfolk Sch. Bd.,* 755 F.2d 59, 62 (4th Cir. 1985) ("[D]ue process required some form of hearing at a meaningful time and in a meaningful manner") (internal quotation marks omitted); *Morris v. City of Danville, Va.*, 744 F.2d 1041, 1046-47 (4th Cir. 1984) (stating that essentials for due process include the right to confront and cross-examine witnesses about material, disputed facts).  For these reasons, the Court DISMISSES the plaintiff's post termination due process claim.

8

*C. State Law Claims*

*1. Wrongful Termination*

As a classified non-probationary employee, Muwonge cannot bring a claim for wrongful termination. She could have raised this issue in her grievance. She pursued her claims according to the State Employee Grievance Procedure, obtaining a hearing before a state administrative officer during which she was represented by counsel. (Dk. No. 20, ex. 1 at 2.)   Muwonge did not appeal the decision of the hearing officer to the Virginia Circuit Court, so state law precludes her claim in this Court for wrongful termination. *See Ellison v. Commonwealth*, 273 Va. 254, 258-59, 639 S.E.2d 209 (2007).   For these reasons, the Court DISMISSES her wrongful termination claim.

*2. Conspiracy*

Muwonge alleges that Washington and Clayton conspired against her to cause her termination, in violation of § 18.2-499 of the Code of Virginia. (Dk. No. 4 at 14.)   The Fourth Circuit has long held that § 18.2-499 "applies only to injuries to business and property interests, not to personal or employment interests." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (internal quotation marks omitted). Here, Muwonge challenges her termination of employment by the DJJ. This issue falls outside the scope of § 18.2-499.

Moreover, the intra-corporate conspiracy doctrine precludes this claim.   Under this doctrine, officials of the same public body acting within the scope of their employment cannot constitute multiple persons for the purposes of establishing a conspiracy. *Buschi v. Kirvan*, 775 F.2d 1240, 1251-52 (4th Cir. 1985). Here, Washington and Clayton acted in their capacity as officers and agents of the DJJ. Washington investigated Muwonge's incident with the juvenile

9

detainee in September 2012, pursuant to his official duties.  Officer Clayton worked alongside Muwonge and filed a report about the same incident involving the plaintiff.  Because Washington and Clayton's interactions with Muwonge occurred in the course of their official duties for the DJJ, they cannot be considered separate persons under the intra-corporate conspiracy doctrine.  This renders conspiracy between these defendants impossible as a matter of law.  Accordingly, the Court DISMISSES her conspiracy claim.

### 3. Workers' Compensation

Muwonge claims that the DJJ violated § 65.2-308 of the Code of Virginia, which makes it unlawful to discharge an employee "solely because the employee intends to file or has filed" a Virginia workers' compensation claim. Va. Code. Ann. § 65.2-308.

According to the facts alleged in the plaintiff's complaint, Muwonge admits to conduct qualifying as a Group III offense under the state employee disciplinary system.  (Dk. No. 20, ex. 1 at 7, 9.)  She admits to taunting a juvenile detainee and failing to withdraw from a hostile encounter with a detainee.  (Dk. No. 20, ex. 1 at 3.)  This type of conduct may lead to termination.  Viewing these alleged facts in the light most favorable to the plaintiff, the Court finds that Muwonge has failed to plead facts sufficient to satisfy the causation requirement of § 65.2-308. For this reason, the Court DISMISSES her claim under this statute.

### III. Conclusion

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss and DISMISSES the plaintiff's suit with prejudice.

The Court shall enter an appropriate order.

Date: <u>January 29, 2015</u>
      Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge